UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| BRUCE MORLEY,<br>    Appellant, | DOCKET NUMBER<br>SF-0752-20-0712-I-1 |
|    v. | |
| DEPARTMENT OF THE AIR FORCE,<br>    Agency. | DATE: September 20, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Crista Kraics, Stafford, Virginia, for the appellant.

Peter Myers and Jonathan Mott, Joint Base Andrews, Maryland, for the
 agency.

Jeremiah Crowley, Maxwell Air Force Base, Alabama, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**FINAL ORDER**

  The agency has filed a petition for review of the initial decision, which
found that the appellant's resignation was involuntary. For the reasons discussed

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

below, we GRANT the agency's petition for review, REVERSE the initial decision, and DISMISS the appeal for lack of jurisdiction.

## BACKGROUND

The facts of this case are somewhat complicated, and our discussion, by necessity, includes information about a prior removal of the appellant and the agency's rescission of that action, the appellant's immigration status in Japan, and the combination of those events, which ultimately led to his resignation.

Events leading to the appellant's 2020 removal

In or around 1984, the appellant moved to Okinawa, Japan, where he met his wife, had two children, and, in 2003, obtained Japanese resident status. Initial Appeal File (IAF), Tab 9 at 28. In 2016, the agency hired the appellant as a scuba instructor and later promoted him to the position of Supervisory Recreation Specialist at Kadena Air Force Base. *Id.*; IAF, Tab 30 at 27-29. In August 2019, someone submitted an anonymous complaint alleging that the appellant engaged in sexual misconduct. IAF, Tab 9 at 29, 45-46. Because the appellant had suffered an on-the-job "near fatal injury" on August 31, 2019, and spent several weeks in the hospital and on workers' compensation, he did not learn of the complaint until he returned to work in late October 2019. *Id.* at 29. According to the appellant, when he returned to work, the agency kept him "out of [his] assigned duties," initiated an investigation into the complaint, and would only inform him that the allegations against him were "of a sexual nature." *Id.* at 29-30. The appellant further asserted that, due to the "overwhelming anxiety and depression" of not knowing or fully understanding the circumstances surrounding the investigation or the allegations against him, he sought mental health treatment. *Id.* at 30.

In January 2020, the appellant was ordered to appear for an interview with the Office of Special Investigation (OSI). *Id.* at 31. On January 24, 2020, the agency proposed the appellant's removal based on 19 specifications of conduct

unbecoming a Federal employee. *Id*. at 45-49. Thereafter, in a March 23, 2020 decision notice, the agency removed the appellant from his position. *Id*. at 59-60.

The appellant timely appealed his removal to the Board. *Morley v. Department of the Air Force*, MSPB Docket No. SF-0752-20-0352-I-1, Appeal File (0352 AF), Tab 1. During the pendency of that appeal, the agency canceled the removal action and reinstated the appellant in an administrative leave status. IAF, Tab 9 at 35, Tab 18 at 28; 0352 AF, Tab 21 at 4. In doing so, the agency indicated that it intended to issue a new proposed action based on an additional investigation conducted by OSI. 0352 AF, Tab 11 at 1, Tab 21. As such, the administrative judge determined that the agency returned the appellant to the status quo ante and, on October 8, 2020, she issued an initial decision dismissing the appeal as moot. 0352 AF, Tab 34, Initial Decision. The initial decision became the final decision of the Board when neither party filed a petition for review.

The appellant's immigration status in Japan

Throughout the period covering the appellant's removal and reinstatement, issues concerning his Japanese resident status arose. The governments of the United States and Japan have entered into various treaties and related instructions that govern the United States' military installations and personnel, including civilian personnel, in Japan. The agreement relevant to this appeal is the 1960 Agreement Under Article VI of the Treaty of Mutual Cooperation and Security Between the United States of America and Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan, more commonly referred to as the Status of Forces Agreement or SOFA. IAF, Tab 10, at 33, Tab 11 at 10-16, Tab 38 at 15.[2] The SOFA applies to the U.S. Armed Forces, civilian

---

[2] The record contains several official documents pertaining to the SOFA, but we are unable to discern if the record contains the SOFA in its entirety. IAF, Tab 11 at 10-23. Nonetheless, the record also contains declarations from a high-ranking agency official and an agency attorney interpreting the SOFA. IAF, Tab 10 at 33-36, Tab 38 at 14-25. The administrative judge relied on the agency's declarations in her discussion of the terms of the SOFA. ID at 2-4. The appellant has not objected to the administrative

component, and dependents. IAF, Tab 11 at 17. As applicable here, the SOFA defines the "civilian component" as "civilian persons of United States nationality who are in the employ of, serving with, or accompanying the United States armed forces in Japan, but excludes persons who are ordinarily resident in Japan." IAF, Tab 10 at 33-34, Tab 38 at 15.

The instructions in place at the time the appellant was hired required civilian component personnel, such as the appellant, to be employed in a status covered under the SOFA. IAF, Tab 38 at 16. As such, on February 26, 2016, the appellant executed a "Statement of Understanding for Self[-]Sponsored SOFA P[e]rsonnel," in which he indicated that he understood that he needed to change his immigration status with local Japanese authorities from resident of Japan to a status covered under the SOFA. IAF, Tab 11 at 42. It is undisputed that the appellant did not change his immigration status. More than 2 years later, Headquarters U.S. Forces Japan issued another instruction, which provided that individuals ordinarily resident in Japan are not eligible for SOFA status as members of the civilian component until they complete certain immigration procedures, one of which is requesting that the Government of Japan remove the existing immigration status so that the person could be covered by the SOFA. *Id*. at 17-18. Thus, for persons such as the appellant who had permanent residency status in Japan, the instruction provides that, once the individual changes to SOFA status, he will be "disqualified from permanent residency status." *Id*. at 19.

On November 24, 2019, the appellant was involved in minor traffic incident with a local Japanese individual, and he subsequently worked with the Japanese authorities to resolve the matter. IAF, Tab 9 at 34-35. Soon thereafter, a member of the local Japanese police contacted the agency expressing concern

judge's reliance on the agency's declarations, nor has he expressed at any point in this appeal that he disagrees with the agency's interpretation of the SOFA's terms. As such, we similarly rely on the agency's declarations concerning the terms of the SOFA when necessary.

that the appellant was a resident alien of Japan while a member of the civilian component, thus bringing the appellant's irregular SOFA status to light. *Id*. at 65; IAF, Tab 38 at 21-22.

The appellant's irregular SOFA status became a more prominent issue in June 2020, when the agency was working to reinstate the appellant following its canceled removal action, as discussed above. IAF, Tab 9 at 64-65. Specifically, the agency informed the appellant that it could not reinstate him until he agreed to rescind his Japanese resident status so that it could put him back into the civilian service and have him covered under the SOFA. *Id*. at 34, 64-69. Nonetheless, as indicated above, at some point in June 2020, the agency did reinstate the appellant, but placed him on administrative leave status. *Id*. at 35; IAF, Tab 18 at 28.

The instant involuntary resignation action currently before the Board

While on administrative leave following his reinstatement in June 2020, the agency informed the appellant that his removal action was, in fact, canceled, but that, to be fully reinstated with his prior duties, he must "convert to SOFA status" in compliance with the applicable instructions. IAF, Tab 9 at 36, 69. The agency warned him that failure to meet this requirement by August 17, 2020, could result in immediate removal. *Id*. Rather than wait for the agency's deadline to convert his Japanese resident status to a status covered under the SOFA, the appellant resigned from his position, effective August 15, 2020, asserting that his decision to do so was involuntary. IAF, Tab 1 at 9, Tab 9 at 70-74.

Thereafter, on September 10, 2020, the appellant filed the instant appeal claiming that he involuntarily resigned. IAF, Tab 1 at 4, 6. Specifically, he argued that his resignation was the result of a "never ending ten-month investigation of dubious origin and duration, refusal to provide evidence in support of the charges against him, repeated efforts to ensure his removal through an unsustainable charge sheet, placement on indefinite administrative leave, and finally, an unreasonable demand to rescind his 17-year Japanese residency or be

'immediately terminated.'" IAF, Tab 9 at 4. Ultimately, the appellant asserted that the totality of the agency's conduct left him with "no realistic alternative but to resign." IAF, Tab 1 at 6. Additionally, the appellant stated that he could not "rule out that the harassment is based . . . on age, gender[,] and disability discrimination." *Id*.

Although the appellant initially requested a hearing, *id.* at 2, he later withdrew that request, IAF, Tab 33. Accordingly, the administrative judge issued an initial decision based on the written record. IAF, Tab 44, Initial Decision (ID) at 1. Therein, she focused solely on the issues surrounding the appellant's immigration status and stated that the agency only offered him the options of surrendering his Japanese residency and converting to SOFA status, knowing that such an action would jeopardize his right to stay in Japan with his family if he was later removed again, or refusing to comply with the SOFA and being removed for failing to do so. ID at 16. She concluded that "[t]his was no real choice." *Id*. As such, she found that the appellant's resignation was involuntary and, thus, that the Board has jurisdiction over his appeal. ID at 16-17. Accordingly, she ordered the agency to reinstate the appellant.[3] ID at 17. In the initial decision, the administrative judge ordered the agency to afford the appellant interim relief if either party filed a petition for review, specifically ordering the agency to effect the appellant's appointment to his prior position and to provide the appellant with "the pay and benefits of his position while any petition for review is pending, even if the agency determines that the appellant's return to or presence in the workplace would be unduly disruptive." ID at 18.

---

[3] A separation pursuant to an involuntary resignation is a constructive removal action, entitling the employee to the procedural due process protections of 5 U.S.C. § 7513. *Thomas v. Department of Housing and Urban Development*, 78 M.S.P.R. 25, 29 (1998). The agency's removal action must comport with the minimum procedures that satisfy the constitutional requirements of due process of law, and the action must be lawful in its entirety. *Drummonds v. Department of Veterans Affairs*, 58 M.S.P.R. 579, 584-85 (1993). If, as here, the agency's removal action does not meet both of these requirements, then it must be reversed. *Id*.

The agency has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. It argues that the administrative judge erred in basing her decision on speculation regarding possible future disciplinary action, and "in opining on whether and how the United States should comply with its international agreement with Japan." *Id*. at 8-13. The appellant has filed a response to the agency's petition for review, wherein he argues that the agency failed to comply with the interim relief order. PFR File, Tab 4 at 4-6. The agency has filed a reply to the appellant's response. PFR File, Tab 5.

## ANALYSIS

The appellant has the burden of proving by preponderant evidence that the Board has jurisdiction over his appeal. 5 C.F.R. § 1201.56(b)(2)(i)(A). An employee-initiated action, such as a resignation, is presumed to be voluntary and, thus, outside the Board's jurisdiction. *Vitale v. Department of Veterans Affairs*, 107 M.S.P.R. 501, ¶ 17 (2007). An involuntary resignation, however, is tantamount to a removal and, therefore, is within the Board's jurisdiction. *Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1328 (Fed. Cir. 2006) (en banc); *Salazar v. Department of the Army*, 115 M.S.P.R. 296, ¶ 9 (2010). To overcome the presumption that a resignation is voluntary, the employee must show that it was the result of the agency's misinformation, deception, or coercion. *Vitale*, 107 M.S.P.R. 501, ¶ 19. To establish involuntariness on the basis of coercion, the appellant must also show that the agency effectively imposed the terms of his resignation, that he had no realistic alternative but to resign, and that his resignation was the result of improper acts by the agency. *Id*. The touchstone of this analysis is whether, considering the totality of the circumstances, factors operated on the employee's decision-making process that deprived him of freedom of choice. *Id.*

<u>The appellant failed to prove that his resignation was involuntary due to the circumstances surrounding his immigration status.</u>

As explained above, in finding the appellant's resignation involuntary, the administrative judge reasoned that the agency provided the appellant with two options: (1) surrender his Japanese residency and come into compliance with the SOFA, at which point the agency was "very likely to remove him again based on additional charges not included in the original removal," causing the appellant also to lose his SOFA status; or (2) refuse to surrender his Japanese residency and be removed for failing to comply with SOFA. ID at 14-15. The administrative judge concluded that "[t]his is a more drastic lose/lose situation than the difficult choices that may be present in other involuntary action appeals," and that the appellant had no "realistic alternative." ID at 15. The administrative judge reasoned that, instead of only providing the appellant with these two choices, the agency could have permitted the appellant to remain in his irregular SOFA status during any reissued adverse action process, and the appellant could have waited to see how that process would unfold before making any consequential decisions. ID at 15. Ultimately, the administrative judge concluded that the appellant proved that the agency coerced him into resigning.[4] ID at 16.

As noted above, the agency argues on review that the administrative judge erred in two regards: first, that her decision is based on speculation that

_____

[4] As noted, the administrative judge ordered the agency to afford the appellant interim relief if either party filed a petition for review. ID at 17-18. The appellant argues on review that the agency failed to comply with the interim relief order. PFR File, Tab 4 at 4-6. As fully explained below, we reverse the initial decision and find that the appellant failed to prove that his resignation was involuntary. Thus, the Board lacks jurisdiction over the appeal. In light of this finding, we exercise our discretion not to dismiss the agency's petition for review regardless of whether the agency complied with the administrative judge's interim relief order. PFR File, Tab 1 at 14-19, Tab 4 at 4-6; *see Lovoy v. Department of Health and Human Services*, 94 M.S.P.R. 571, ¶ 28 (2003) (declining to dismiss an agency's petition for review for failure to provide interim relief when the issue of the Board's jurisdiction over the appeal was not yet resolved). To the extent the appellant's pleadings on review include a motion to dismiss the agency's petition for review based on an alleged failure to provide interim relief, such a motion is, therefore, denied.

subsequent disciplinary action was imminent; and second, that she inappropriately "opined" on how the United States should honor its agreements with a foreign country. PFR File, Tab 1 at 4-5, 8-13. We address each argument in turn below, and, for the reasons explained, reverse the administrative judge's findings to conclude that the appellant failed to prove that his resignation was involuntary.

The two options set forth by the administrative judge are both premised on the assumption that subsequent disciplinary action would be forthcoming and that the appellant's decision on how to deal with his immigration status would determine the nature and basis for such disciplinary action. Regarding the choice to refuse to forfeit his Japanese resident status and convert to a status covered under the SOFA, the record shows that the agency did, indeed, inform the appellant that his failure to bring his immigration status within the terms of the SOFA by August 17, 2020, "may result in immediate removal." IAF, Tab 9 at 69. Thus, the administrative judge's conclusion that this option would result in discipline is not speculative. However, regarding the choice to relinquish his Japanese resident status to become covered under the SOFA, after which the administrative judge presumed that the appellant would likely face removal based on the results of the OSI investigation, we observe that the agency had not, at that time, proposed the appellant's removal, nor does the record establish that it communicated to the appellant that disciplinary action was imminent. Generally, conjecture or anticipation of an adverse action does not constitute coercion or duress on the part of the agency. *See Holman v. Department of the Treasury*, 9 M.S.P.R. 218, 220 (1981), *aff'd*, 703 F.2d 584 (Fed. Cir. 1982) (Table). Although the record includes a May 18, 2020 email from an agency attorney to the appellant's attorney indicating that he recently learned that the investigation into the appellant's alleged misconduct had a criminal component and that the "intended way" forward was to "reinitiate the proceedings incorporating the new information," IAF, Tab 9 at 62, at the time the appellant resigned, approximately

3 months later, the agency had not proposed an adverse action, IAF, Tab 1 at 9. Thus, the appellant was merely anticipating the imposition of an adverse action, which does not render his resignation coercive. *See Holman*, 9 M.S.P.R. at 220.

Regardless, even if the appellant had established that an adverse action was imminent, he nonetheless would ultimately have been faced with the same options. When distilled, the appellant was simply required to decide whether he wanted to maintain his Japanese resident status to ensure his right to stay in Japan with his family or whether he wanted to forfeit that status, thereby regularizing his SOFA status and complying with the agency's requirement under the United States' treaty obligations with Japan. We acknowledge that this would have been a difficult and unpleasant choice. Nevertheless, the Board has held that the fact that an employee is faced with the unpleasant choice of either resigning—which, here, has allowed the appellant to maintain his Japanese resident status—or opposing a potential removal action—which, here, the agency indicated would have resulted if the appellant refused to regularize his SOFA status—does not rebut the presumed voluntariness of the employee's ultimate choice. *See Searcy v. Department of Commerce*, 114 M.S.P.R. 281, ¶ 12 (2010) (stating that it is well-established that the fact than an employee is faced with the unpleasant choice of either resigning or opposing a potential adverse action does not rebut the presumed voluntariness of his ultimate choice). Rather, the appellant operated with the freedom of choice to determine which potential consequence would have been less disruptive to his life. Therefore, we find that the appellant failed to prove that his choice to resign was the product of coercion on the part of the agency.[5] *See Vitale*, 107 M.S.P.R. 501, ¶ 19.

---

[5] To find otherwise would lead to the peculiar result wherein the agency is required to reinstate the appellant to a position for which he is required to obtain SOFA status—a requirement he expressly decided against fulfilling. Indeed, this is the very predicament the parties faced when attempting to comply with the administrative judge's interim relief order. Thus, to find that the appellant's resignation was involuntary would place the parties in a situation where the challenges surrounding the appellant's immigration status would continue in perpetuity.

Regarding the administrative judge's discussion concerning the agency's failure to provide the appellant with the opportunity to remain in an irregular SOFA status during the pendency of any reissued adverse action, we agree with the agency that the Board is without authority to instruct an agency how to comply with the United States' international agreements or order an agency to make allowances for an employee who is not in compliance with the terms of those agreements. We understand the administrative judge's explanation that the agency had placed the appellant in an administrative leave status while allowing him to maintain an irregular SOFA status following his reinstatement and, thus, could have conceivably permitted him to do the same here. However, having bent the requirement under the United States' treaty obligations once, the agency was not obligated to do so again.

Importantly, the record establishes that the local Japanese authorities had inquired with the agency at least twice—the second time on June 2, 2020—about the appellant's irregular SOFA status, apparently prompting the agency to impose a deadline for the appellant to regularize his SOFA status. If the agency had allowed the appellant to remain in an indefinite administrative leave status, it would have been unable to respond to the Japanese authorities with a definitive timeframe for the resolution of the appellant's status. Such a circumstance would contradict a general expectation that an agency comply with the United States' treaty obligations. Indeed, the Board has recognized such an expectation specifically within the context of a SOFA between the United States Government and the North Atlantic Treaty Organization (NATO). In *Montee v. Department of the Army*, 110 M.S.P.R. 271 (2008), the Board concluded that an agency appropriately withdrew a tentative job offer because the selectee's appointment would have violated the SOFA between the United States and NATO. *Montee*, 110 M.S.P.R. 271, ¶ 10. Thus, the Board implicitly reasoned that an agency can be expected to act in accordance with the terms of a SOFA. Similarly, here, the agency can be expected to require its employees to obtain the proper immigration

status as required in the SOFA, regardless of any prior acts. Accordingly, we find no issue with the agency's requirement that the appellant convert his immigration status to one covered under the SOFA.

The appellant failed to prove that any other circumstance rendered his resignation involuntary.

Because the administrative judge relied exclusively on the appellant's purported choice between relinquishing his Japanese residency and obtaining a status under the SOFA or maintaining his Japanese residency and being removed from his position for failing to obtain a status under the SOFA, she did not consider whether the working conditions asserted by the appellant were so intolerable that his resignation should be deemed involuntary. ID at 12-16. Nor did she address the appellant's claims of discrimination. *Id*.; IAF, Tab 1 at 6. As such, we do so here.

When considering whether an appellant's resignation is involuntary due to intolerable working conditions, the ultimate question is whether, under all the circumstances, working conditions were made so difficult by the agency that a reasonable person in the employee's position would have felt compelled to resign. *See McCray v. Department of the Navy*, 80 M.S.P.R. 154, ¶ 8 (1998). Here, the appellant asserted that the circumstances surrounding the investigation, the agency's refusal to provide evidence in support of the charge against him, its "repeated efforts to ensure his removal through an unsustainable charge sheet," and his placement on "indefinite administrative leave" created conditions so intolerable that he was forced to resign. IAF, Tab 9 at 4. Although the appellant's circumstances undoubtedly caused him stress, we find that he has failed to show that such circumstances were so intolerable that a reasonable person in his position would have felt compelled to resign.

With respect to the appellant's alleged lack of information about the investigation, the agency has asserted that OSI is a Federal law enforcement and investigative agency that generally does not coordinate its investigations with the

subjects of those investigations. IAF, Tab 10 at 5-6. Although the appellant may have found such a situation to be frustrating and stressful, he has failed to explain how, or show that, it was intolerable. *See Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000) (explaining that an employee is not guaranteed a working environment free of stress). Regarding the charges against the appellant in the removal action, which, he alleges, could not be sustained, it is undisputed that the agency rescinded the removal action 2 months prior to the appellant's resignation. Regardless, the agency removed the appellant in March 2020—approximately 5 months before his resignation. The Board has explained that the focus in an involuntary resignation appeal is on the circumstances immediately preceding the appellant's action. *Id.*, ¶ 10. Thus, even if the agency was unable to support its removal action, that action could not have had an immediate impact on the appellant's decision to resign. *See Searcy*, 114 M.S.P.R. 281, ¶ 13 (concluding that a 5-month lapse of time between an event and an appellant's resignation undercut the assertion that his working conditions were so intolerable as to have compelled his resignation). Finally, the agency intended for the "indefinite" administrative leave referenced by the appellant to terminate on or around August 17, 2020, the date by which the appellant was required to regularize his SOFA status. IAF, Tab 9 at 36, 69. As such, the administrative leave was not actually "indefinite." Based on the foregoing, we conclude that the appellant failed to prove that his working conditions were so intolerable as to render his resignation involuntary.

Regarding the appellant's claims of discrimination, the Board will address allegations of discrimination only insofar as they relate to the issue of voluntariness and not whether they would establish discrimination as an affirmative defense. *See, e.g.*, *Pickens v. Social Security Administration*, 88 M.S.P.R. 525, ¶ 6 (2001). Thus, evidence of discrimination ultimately goes to the question of coercion. *Id*. Here, the appellant claims that he was discriminated against on the bases of age, gender, and disability. IAF, Tab 1 at 6.

We have reviewed the record, and the appellant has not put forth any evidence to show that such alleged discrimination occurred in the first instance, let alone any evidence that such discrimination affected the voluntariness of his decision to resign. Accordingly, we find that the appellant failed to prove that discrimination created an environment wherein the appellant felt coerced into resigning.

Based on the foregoing, we reverse the initial decision and find that the appellant failed to establish that his resignation was involuntary. Because the Board lacks jurisdiction over voluntary resignation appeals, we dismiss this appeal for lack of jurisdiction.

## NOTICE OF APPEAL RIGHTS[6]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you

<u>receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
P.O. Box 77960<br>
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>.** This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.